Case number 10-3016, People v. Mario Lomax. On a custom seat, sir. Good morning, Your Honors. I'm Nancy Colletti, Assistant State's Attorney on behalf of the People. Harold Winston, Assistant Public Defender for Mario Lomax. May it please the Court, Counsel. Good morning. The People assert in this case that the trial court erred in granting the defendant's motion to quash arrests and suppress evidence. The entry in this case into the apartment was justified under the emergency aid exception to the court requirement of the Fourth Amendment. In this case, there was one officer, Police Officer Thomas, who testified at the hearing. He testified that he and his partner received multiple... We read the record and we understand all of that. Based on the multiple... Was the judge here confused? Is that what happened? I think... Let me phrase it a little different. Is it a question, did the judge err in a factual finding or did he err as a matter of law? The judge erred in both respects. What's the factual finding that is not supported by the manifest weight of the evidence? The judge's factual finding originally was supported by the manifest weight of the evidence. And the judge, in his original finding on the motion, ruled or found that at least one call directed the officer to the first floor rear apartment in this building. At the hearing on the motion to reconsider, the judge found, which was against the manifest weight of the evidence, that he found no objective basis on which to conclude that the officer was directed to any particular apartment in that building. Let me stop you right there because let's say the call did come in and say rear apartment at this specific address. How does that create an emergency? Because of the nature of the calls. They received multiple calls. So whenever a certain type of call comes into the police station, it necessarily creates an emergency which necessarily gives the police the right to enter anyone's home? The call, it depends on what the call is. The call here was shots were fired. Shots were fired. More than one call. Multiple calls. Shots fired. So it's clear. Shots fired and a specific address, a specific apartment is given that once you get a call that says shots fired, the police have the right to enter that apartment even against the wishes of the person present at that apartment? In this situation, and we look at each circumstances of each case. I thought it was a yes or no question. I mean, isn't that what you're saying? You're saying that based on the nature of the call, that the police had a right to enter this apartment because an emergency aid exception applies to the warrant requirement? Yes, because the call was shots fired within the apartment. The officer knocked on the door. How would someone outside the apartment know that shots were fired within the apartment? How would anyone know? Did anyone reveal themselves as to how they knew shots were fired within the apartment? I think from hearing the shots fired, and I think that would be speculating at this point as to who made these calls. And maybe that was the judge's concern. That's why the trial judge said not enough here. But I think under the circumstances in this case, to say that officers could not, under those circumstances, when they knocked on the door and a child answered the door, there were small children in the apartment, there were two women there, the defendant came from another area, that under those circumstances, within two to three minutes of receiving all these calls, they arrived on the scene, that this would be against public policy. The interest in protecting citizens. Why would public policy say in that very situation that you've just described, that when you have adults present in the apartment, the officer should ask a question or two before stepping into the unit? Is there a gun here? Is anyone hurt here? How many people are inside? Did you hear gunshots? Did anybody fire a gun inside this unit? I mean, what's wrong with that? And in fact, do you give me permission to enter your unit? What if one of the adults had said, I'm not giving you permission to enter the unit? First, I'll answer all your questions. No, no, no, no, no. And I'm not giving you permission to enter my unit. Did the officer still have the right to disregard the lack of consent of the adult present and say, I'm still entering? Respectfully, Your Honor, in asking all those questions, the officers could have been losing precious time. Based on what they knew at that time. We all know now that there was no time to lose. But that doesn't matter at this point. It's what was happening in the officer's mind and what was happening in any reasonable person's mind at that time. I thought it was an objective standard, not a subjective standard. Not his mind, but any reasonable person's mind based on those circumstances presented. I feel like I'm fairly reasonable, and it just doesn't strike me. Let's say the trial, the only one that really matters here is whether or not the trial judge was reasonable. And that's what we're reviewing. The trial judge was reasonable or wasn't he? And if he wasn't reasonable, you have to tell us where did he go wrong? But I haven't heard it yet. The trial judge went wrong because in ruling in the motion, he did not even address the emergency aid exception or dress aid argument. Because maybe he didn't think it applied. Because here's the emergency aid, the quotations that you have in your briefs about smoke coming from an apartment. Nobody's going to knock and say, please let me in. They're going to break down the door because smoke is coming from the apartment. Or if the officer was outside the door and heard gunshots within the apartment, he's going to break down the door and go into the apartment. That's the situation. That's an emergency aid situation. It isn't an emergency aid situation to receive a call saying shots were fired, multiple calls were made, shots fired near this location, at this location, and maybe even one or two in the unit without investigating whether those, and as the trial judge said, whether or not those calls were legitimate. Respectfully, Your Honor, a probable cause can be based upon information received in a 911 call. And in this case, the officers, the police, had received multiple 911 calls, directing them to the first floor, the first floor rear unit. If you had probable cause, you probably didn't need very much more. But I don't recall there being an argument that probable cause existed. I thought it was approaching probable cause on a reasonable basis. It is, and in this case, it did. There was a reasonable basis approaching probable cause. The trial court got sidetracked, ignored anything to do with the emergency aid exception, and began talking about consent and acquiescence, neither of which are required under the emergency aid exception. The trial court never said, I find that this was not an emergency situation. I find that, you know, there weren't these circumstances. If he finds that it's not an emergency situation, then acquiescence and lack of consent come into play. Because then you need consent to enter the unit if the judge says an emergency aid situation did not exist. But the judge did not say that in this case, Your Honor. And based on, you know, everything that was presented to the officers at this time, we maintain, people maintain that the officers were justified in crossing that threshold. I'll reserve time for rebuttal. Thank you. Is anything wrong? Is anybody hurt? Did you hear gunshots? Those are the questions the officer should have asked when the door opened and when he saw a completely peaceful scene with women and children. There was nothing he saw outside the apartment, no sign of blood, as in some U.S. Supreme Court cases. There was nothing he saw wrong inside the apartment. Let me ask you a question about that. When the officer rang the bell or knocked on the door and a little child comes and he sees that there's adults all over the place but nobody's coming to talk to him, is that reasonable? Would the police officer wonder why no adult came there when there's been a call that gunshots were heard? Well, Judge, I think it's a fair inference that if a child opened the door, the child was the nearest person to the door. It also is reasonable to say that nothing sinister was going on inside if the child goes to the door. And after the child goes to the door, still an adult doesn't come to the door. That doesn't tell the officer something? Do you know how much time elapsed between the officer knocking on the door and the little child opening the door and the officer entering? My impression is the door opened right away. And he entered right away. Well, that's not my impression. And Judge, I will add that the officer first testified that a woman opened the door and then changed it to a child. There were a number of inconsistencies, by the way, in the officer's testimony. First, he said there were three women. Well, if a woman opened the door and ran away to leave the child, wouldn't that give you some indication something's going on? And we would have a different case if that were the case. I agree with Judge Garcia about that. Yes, that was a different case because there is another case where a woman runs away, actually. Let me ask you this. Let's say they found those shell casings before they knocked on the door as opposed to after. That would also possibly be a different case, wouldn't it? It would possibly be a different case, although I know there was no indication of how long the shell casings had been there. Just as like when they found the gun, there was no indication the gun had been fired. That also might cast doubt on the call that shots were fired inside the unit as opposed to outside the unit. Absolutely correct. Yes, but the calls that were called in here said that there were shots heard inside the unit. And when the officer arrived and knocked on the door and a little child opens the door and he sees adults, and adults seem not to want to be seen, wouldn't a reasonable police officer believe that something is going on, especially when he's heard that gunshots have been heard inside that apartment? Well, with respect, Judge, there is nothing in the officer's testimony indicating the adults did not want to be seen. There is nothing indicating they made any furtive movements, they tried to hide themselves. I don't know if a little child came to the door and I saw a bunch of adults and they ignored me. I would wonder about that. Again, I don't think there's any testimony the adults were ignoring the officer. But the testimony is when the officer said everyone out, everybody moved out and even Mario came from the back and moved out, too. So you had cooperation here. You didn't have any resistance, again, unlike some of the cases, some of the U.S. Supreme Court cases. What's our standard of review here? Well, the standard of review is twofold. As to finding the facts, you can only overrule the judge if you believe it's manifestly erroneous. As to the conclusions of law, it's de novo, as I said in the brief. And I think the state said the same thing in its brief. And I think the judge had a right to make the finding he did because there was a police report done. And the officer was asked, well, in the police report, did you indicate you were directed to a specific apartment? And the only thing on the report was the address. So we don't know how good the police officer's memory, especially when he's mistaken. And it changes his position as to other things. But the judge took that as true in his findings. He initially said one of the calls at least directed the officer to a specific apartment. And then he changed it on reconsideration. But initially, in reciting what the facts were, he said there were several calls from a particular address, at least one of which directed the officer to a particular apartment. With respect, Judge, I think you can read that two ways. I read that paragraph, which is P26A2 in my brief, as the judge summarizing the officer's testimony. The judge is saying, the officer says this. I don't feel that the judge is saying, I'm finding that. I think on the motion for reconsider, it's clear he's saying, no, there is no objective evidence. And I think he's putting weight on the fact that the report did not mention any specific location. It just mentioned the complex itself. So I read that a little bit differently. And even if the call did come in, even if there was one call that came in that shots were fired inside the unit, does that necessarily trigger the emergency aid exception? I don't believe it did. I mean, for one thing, it would be different if a call said, I heard shots fired and I heard someone scream. That would indicate that there was an emergency. Well, we don't even know, nor did any of the callers apparently say, I heard shots fired and I know shots because I served in Iraq or I was in the police. I mean, a lot of sounds sound like gunshots, including firecrackers. Obviously, every Fourth of July, I can't tell. Do we know what the distance was between the inside unit and where those shell casings were recovered, so that anyone hearing shots being fired from just outside the door where the shell casings were recovered might erroneously conclude that the shots were coming from inside the unit as opposed to outside? I don't think that distance is made clear in the record either, Judge. I would want to point out that there are U.S. Supreme Court cases that both sides have cited on this issue, Michigan v. Fisher, Brigham City v. Stewart. And if you look at the cases, what we find is, yes, there's an initial call, but when the police arrive, they see something going on. In Michigan v. Fisher, they see a truck with a smashed front, they see broken house windows, blood on the hood of the truck and on the clothes, and through the window, they see a defendant throwing things and screaming. And then they still try to ask them, because they think they see a cut on his hand, do you need medical attention? So they ask a question, even with everything they see. And then when the question is ignored, only then do they go in. And the court said in Michigan, just as in the earlier case, Brigham City v. Stewart, there was a tumultuous situation in the house, the very opposite of what we have here. They say officers could see violent behavior inside, and applying the emergency aid exception. Again, the exact opposite of what we have here. Brigham City v. Stewart, there was a call of a complaint. They get there in a party, and what do they see? They see three adults restraining a teenager. He breaks away and he punches one in the face, and they see the guy spit blood. So they actually see fighting going on, and the court said they could hear a fight, they could hear thumping, crashing, they could see juvenile striking an adult. Well, of course, that would fit the emergency aid exception. We don't have that here. And there was even a case after the briefs that came down. It looks like every three years the U.S. Supreme Court somehow gets one of these cases. Ryburn v. Huff, now it's a little different. It was a civil rights violation case against the police. But what happened there, it's a school principal who calls the police and says, rumor is that this guy is going to shoot up the school. And the police go out to investigate the school, find the guy has been absent a few days, he's been bullied, they've had training in dealing with these things. They find a student who says he's capable of doing it. They go out to the house. They knock, no one's there. They call, they get the mother on a cell phone. It's not the same thing as shots being fired outside.  They say, are there any guns in the house? And there the mother runs in the house without answering. They're concerned. They follow. But what results is there's a conversation. The mother, the father, the kid, and the officers, five to ten minutes, they leave. They do not search that house at all, even though they'd done an investigation previously. So if you look at the Supreme Court cases or even the Illinois cases, you find that when the entry is upheld, you've got a lot more going. And as I was going to say, even before the Fourth Amendment, we had James Otis in 1761 proclaiming a man's house as his castle, and he resigned his position in Massachusetts to argue against the writs of assistance. So we have a long tradition that when you're in your house, you have special protections that the police have to honor because we're not a police state. Thank you very much. Thank you. We have a couple minutes for rebuttal. Your Honor, to conclude that the officers in this case would have had to see the shots or hear the shots fired themselves in order to trigger the emergency aid exception lies in the face of the public policy that is behind this exception. This was a case where they received multiple calls of shots being fired. They were directed by one call to their department. And I think that the trial court did find that. Are you saying that one call wouldn't have been sufficient? No. Even if they said it was in this unit, that this address, one call wouldn't have been sufficient? I'm not saying that at all. But I'm just saying in this case, it wasn't where it was even in doubt. What if the same person had called multiple times? Does that make a difference? No. I will say they received a call. Even if they received one call of shots fired within their department, when the officers arrived there, the door was answered by a 2- or 3-year-old-aged child. At that point, to waste precious moments knowing that information, that someone has Was it tumultuous inside that unit as the officer stood at the door? No, there was testimony that it didn't. But how did they know what was going on in one of the bedrooms? There was testimony that in one of the calls reported that they also heard a door being slammed in that apartment. I think that also adds to the knowledge they had at the time. What if someone was in the bedroom being held? What if there was another child in there? And I think under the circumstances in this case that the officers were justified, under this exception, in crossing the threshold. We ask that you reverse the trial court's ruling on the motion. All right. Well, thank you for giving us this very interesting case, and we'll take it under advisement.